# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRYANT PREUDHOMME, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| PRIME HYDRATION, LLC, | |
| Defendant. | |

Plaintiff BRYANT PREUDHOMME ("Plaintiff"), by and through his counsel, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Prime Hydration, LLC ("PRIME" or "Defendant") for its materially false and deceptive manufacturing, marketing, and sale of Prime Energy Drinks (the "Products")[1] that contain higher than advertised amounts of caffeine, and alleges the following facts in support of his claims against Defendant based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## I. INTRODUCTION

1. Defendant has improperly and misleadingly packaged and marketed its Products to reasonable consumers, like Plaintiff, regarding the amount of caffeine in its Products.

2. Defendant formulates, manufactures, advertises, and sells the widely popular "PRIME Energy" drinks.

---

[1] https://drinkprime.com/collections/energy (last accessed April 29, 2024).

3. The Products include Prime Energy Blue Raspberry, Prime Energy Ice Pop, Prime Energy Lemon Lime, Prime Energy Orange Mango, Prime Energy Strawberry Watermelon, and Prime Energy Tropical Punch.



   



**LEMON LIME**
12PK / $29.99

LEARN MORE



**ORIGINAL**
12PK / $29.99

LEARN MORE

**ICE POP**
12PK / $29.99

LEARN MORE

**STRAWBERRY WATERMELON**
12PK / $29.99

LEARN MORE

**BLUE RASPBERRY**
12PK / $29.99

LEARN MORE

**TROPICAL PUNCH**
12PK / $29.99

LEARN MORE

**ORANGE MANGO**
12PK / $29.99

LEARN MORE

4. Throughout the United States, Defendant markets its Products in a systematically misleading manner, by misrepresenting that its Products have specific amounts of caffeine that they do not in fact contain.

5. Reasonable consumers, like Plaintiff, trust manufacturers like Defendant to sell products that live up to what is advertised. Reasonable consumers, like Plaintiff, certainly expect the energy drinks they consume to contain an accurate and safe level of caffeine in each and every Product. Reasonable consumers expect that this will be disclosed on the products' packaging so that they can have full and fair information to decide for themselves whether to consume the product and at what amount, if any.

6. Consumers lack the knowledge necessary to determine whether the Products do in fact contain more caffeine than advertised, or to ascertain the true nature of the quality of the Products. Reasonable consumers therefore must and do rely on Defendant to be transparent and properly disclose on the packaging all material information regarding the Products and their ingredients and not to misrepresent the nature of the Products.

7. Yet, nowhere on the Products' packaging is there any disclosure that the Products contain or may contain more caffeine than advertised.

8. Plaintiff brings this class action against Defendant for deceptive business practices, as well as for unjust enrichment, due to its false advertising. Plaintiff seeks injunctive and monetary relief on behalf of the proposed Class including (i) requiring full disclosure of caffeine volumes in Defendant's marketing, advertising, and packaging; (ii) requiring testing for such; and (iii) restoring monies to Plaintiff and the members of the proposed Class(es) as defined below.

## II.  PARTIES

*Plaintiff*

9. Plaintiff Bryant Preudhomme is a citizen and resident of the State of New York. During the applicable statute of limitations period, Plaintiff purchased in New York several of the Products that were manufactured and produced by Defendant that contained higher than advertised levels of caffeine. He paid up to the regular retail price for the Products.  Plaintiff relied on the packaging in making his purchase, was unaware that the Products contained more caffeine than advertised and would not have purchased the Products if that were fully disclosed or he would have paid less than he did.  As a result of Defendant's deceptive conduct as alleged herein, Plaintiff was injured when he paid the purchase price and/or a price premium for the Products that did not deliver what Defendant promised.  Plaintiff paid the above sum in reliance that the packaging of the Products was accurate and that there were no material omissions.  Plaintiff would purchase the Products again if Defendant (i) lowered the amount of caffeine in the Products; and/or (ii) undertook corrective changes to the packaging.  Damages can be calculated through expert testimony at trial.

*Defendant*

10. Defendant is a limited liability company organized under the laws of Delaware, with its principal place of business located at 2858 Frankfort Ave., Louisville, Kentucky 40206.

11. Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells the Products throughout the United States.

## III.  JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2), because at least one Class Member is of diverse

state citizenship from Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

13. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of products throughout this District.

14. Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant has its principal place of business in this District and because a substantial part of the events giving rise to the conduct alleged in this Complaint occurred in, were directed to, and emanated from this District.

## GENERAL ALLEGATIONS

**The Products**

15. The world took notice when Logan Paul and KSI, two YouTube personalities with a combined following of over 140 million subscribers, announced their collaboration on a new beverage company.[2]

16. In January of 2022, Prime Hydration, LLC, launched its first drink, Hydration, a sports drink containing neither sugar nor caffeine.

17. One year later, Prime beverages added "PRIME Energy" to its product line.

18. The duo's involvement in the project generated significant social media hype, driving demand for the Products, particularly among school-age children and teenage boys.[3]

---

[2] https://www.therichest.com/rich-powerful/the-prime-hydration-story-how-it-became-a-big-name-in-the-beverage-business/ (last accessed April 29, 2024).
[3] *Id.*

19. However, with almost double the amount of caffeine than a Red Bull, PRIME Energy drinks are being banned in some schools.[4]

20. PRIME Energy is advertised to contain 200mg of caffeine in each can.[5] For context, popular and comparable energy drinks like Monster and Red Bull contain between 86 and 111mg of caffeine.[6]

**The Misrepresentations**

21. Pursuant to 21 U.S.C. § 321(f), Defendant's Products constitute a "food" regulated by the FDCA, 21 U.S.C. § 301, et seq., and other FDCA regulations.

22. Defendant's false, deceptive, and misleading label statements are unlawful under state unfair and deceptive acts and practices statutes and/or consumer protection acts, which prohibit unfair, deceptive, or unconscionable acts in the conduct of trade or commerce.

23. Defendant labels and advertises its Products to contain 200 milligrams of caffeine on its website,[7] and on the side and back of the Products themselves. Such representations constitute an express warranty regarding the Products' caffeine content.

24. Defendant has intended for Plaintiff and the Class members to be misled.

25. Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the Class.

26. In more detail, Defendant's Products' label plainly states the Products contain "200mg of caffeine":

---

[4] https://www.delish.com/food-news/a43325583/prime-energy-drink/ (last accessed April 29, 2024).
[5] https://drinkprime.com/collections/energy (last accessed April 29, 2024).
[6] https://www.delish.com/food-news/a43325583/prime-energy-drink/ (last accessed April 29, 2024).
[7] https://drinkprime.com/collections/energy (last accessed April 29, 2024).





27. However, independent testing confirms that the Product contains substantially more than 200mg of caffeine.

28. This is highly alarming given a massive share of PRIME's audience include adolescents. According to the Centers for Disease Control and Prevention ("CDC"), "The American Academy of Pediatrics states that caffeine and other stimulant substances contained in energy drinks have no place in the diet of children and adolescents."[8]

29. Side effects for kids consuming caffeine could include rapid or irregular heartbeats, headaches, seizures, shaking, stomach upset and adverse emotional effects on mental health.[9]

30. In discussing the potential dangers of energy drinks, the CDC noted that in 2011, 1,499 adolescents aged 12 to 17 years went to the emergency room for an energy drink related emergency.[10]

31. Given the above, at a minimum, consumers ought to be confident that the amount of caffeine in the Products they consume is accurate and reliable.

32. Reasonable consumers, like Plaintiff, trust manufacturers like Defendant to sell products that live up to what is advertised.

33. Reasonable consumers, like Plaintiff, certainly expect the energy drinks they consume to contain an accurate and safe level of caffeine in each and every Product.

34. Reasonable consumers expect that this will be disclosed on the products' packaging so that they can have full and fair information to decide for themselves whether to consume the product and at what amount, if any.

---

[8] https://publications.aap.org/pediatrics/article/127/6/1182/30098/Sports-Drinks-and-Energy-Drinks-for-Children-and?autologincheck=redirected (last accessed April 29, 2024).
[9] https://www.reuters.com/business/healthcare-pharmaceuticals/rising-caffeine-levels-spark-calls-ban-energy-drink-sales-children-2023-08-30/ (last accessed April 29, 2024).
[10] Center for Behavioral Health Statistics and Quality. The DAWN Report: Update on Emergency Department Visits Involving Energy Drinks: A Continuing Public Health Concern. Rockville, MD: Substance Abuse and Mental Health Services Administration; 2013. 17 Seifert SM, Schaechter JL, Hershorin ER, Lipshultz SE. Health effects of energy drinks on children, adolescents, and young adults. Pediatrics. 2011:127(3), 511-528.

35. However, Defendant intended for Plaintiff and the Class members to be misled and Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the Class.

### IV.     CLASS ACTION ALLEGATIONS

36. Pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of himself and a multistate Class defined as:

> **National Class:** All persons who purchased the product during the applicable statute of limitations.

37. In the alternative, pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of himself and a New York Subclass defined as:

> **New York Subclass:** All persons in the state of New York that purchased the Products within the applicable limitations period.

38. The National Class and the New York Subclass are collectively referred to as the "Class." The Class excludes Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

39. Certification of Plaintiff's claims for class-wide treatment is appropriate because all elements of Fed. R. Civ. P. 23(a), (b)(2)-(3), as well as 23(c)(4), are satisfied. Plaintiff can prove the elements of his claim on a class-wide basis using the same evidence as would be used to prove those elements in an individual action alleging the same claims.

40. **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(l) are satisfied. The members of the Class are so numerous and geographically dispersed that individual joinder of all

Class members is impracticable. While Plaintiff is informed and believes that there are thousands of members of the Class, the precise number of Class members is unknown to Plaintiff. Plaintiff believes that the identity of Class members is known or knowable by Defendant or can be discerned through reasonable means. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

41. **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a. whether Defendant engaged in the deceptive and misleading business practices alleged herein;

b. whether the omissions by Defendant were likely to deceive a reasonable consumer;

c. whether Defendant knew or should have known that the Products contained more caffeine than advertised;

d. whether Defendant failed to disclose that the Products contained more caffeine than advertised;

e. whether Defendant was unjustly enriched by its actions;

f. whether the omitted facts are material to a reasonable consumer;

g. whether Plaintiff and members of the Class were injured and suffered damages;

h. whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief; and

   i.  whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages.

  42. **Typicality:**  All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied.  Plaintiff is a member of the Class, having purchased for personal consumption the Products that were manufactured by Defendant.  Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's conduct.

  43. **Adequacy of Representation:**  All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied.  Plaintiff is an adequate Class representative because he is a member of the Class and his interests do not conflict with the interests of the other members of the Class that he seeks to represent.  Plaintiff is committed to pursuing this matter for the Class with the Class' collective best interests in mind.  Plaintiff has retained counsel competent and experienced in complex class action litigation of this type, and Plaintiff intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the Class' interests.

  44. **Predominance and Superiority:**  All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied.  As described above, common issues of law or fact predominate over individual issues.

Resolution of those common issues in Plaintiff's individual case will also resolve them for the Class' claims.  In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful

conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

45. **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Class, making final declaratory or injunctive relief appropriate.

### V. CAUSES OF ACTION

#### COUNT I
**Deceptive Acts or Practices, New York GBL § 349**
**(On Behalf of Plaintiff and the New York Sub Class)**

46. Plaintiff brings this Claim individually and on behalf of other members of the New York Subclass as defined above.

47. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making the Misrepresentations.

48. The foregoing deceptive acts and practices were directed at consumers.

49. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, and benefits of the Products to induce consumers to purchase same.

50. Plaintiff and members of the New York Subclass were injured because: (a) they paid a price premium for the Products based on Defendant's Misrepresentations; and (b) the Products do not have the characteristics, uses, or benefits as promised, namely the represented caffeine content. Namely, the Products contain levels of caffeine in excess of that represented on

the Products labels and advertising. As a result, Plaintiff and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

51. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### False Advertising, New York GBL § 350
### (On Behalf of Plaintiff and the New York Sub Class)

52. Plaintiff, individually and on behalf of the Class, repeats and re-alleges the allegations contained in paragraphs 1 through 51 as though fully set forth herein.

53. Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

54. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York GBL.

55. Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to, the Misrepresentations, were and are directed to consumers.

56. Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

57. Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, have resulted in consumer injury or harm to the public interest.

58. Plaintiff and members of the New York Subclass have been injured because: (a) they paid a price premium for the Products based on Defendant's Misrepresentations; and (b) the Products do not have the characteristics, uses, or benefits as promised, namely the represented caffeine content. Namely, the Products contain levels of caffeine in excess of that represented on the Products labels and advertising. As a result, Plaintiff and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

59. As a result of Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, Plaintiff has suffered and will continue to suffer economic injury.

60. Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendant's Misrepresentations because they paid more for the Products than they would have had they known the truth about the Products.

61. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

62. Plaintiff, individually and on behalf of the Class, repeats and re-alleges the allegations contained in paragraphs 1 through 61 as though fully set forth herein.

63. Plaintiff and the Class members conferred a monetary benefit on Defendant. Specifically, they purchased the Products from Defendant and provided Defendant with their

monetary payment. However, in exchange, Plaintiff and the Class members received from Defendant goods that were misleading.

64. Defendant knew that Plaintiff and the Class members conferred a benefit on them and accepted or retained that benefit. Defendant profited from Plaintiff's purchases and used Plaintiff and the Class members' monetary payments for business purposes.

65. Defendant failed to disclose to Plaintiff and the Class members that its Products contained higher than advertised caffeine.

66. If Plaintiff and the Class members knew the true nature of Defendant's Products as alleged herein, they would not have purchased the Products or would have paid less for them than they did.

67. Plaintiff and the Class members have no adequate remedy at law.

68. Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and the Class members conferred on it.

69. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and the Class members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and the Class members overpaid.

## COUNT V

### Common Law Fraud

70. Plaintiff, individually and on behalf of the Class, repeats and re-alleges the allegations contained in paragraphs 1 through 69 as though fully set forth herein.

71. Defendant created and implemented a calculated scheme to market PRIME Energy drinks through a pervasive pattern of false and misleading statements and omissions directed to

consumers. Defendant aimed to portray PRIME Energy drinks as cool and safe, with a particular emphasis on appealing to minors, while misrepresenting and omitting key facts concerning PRIME Energy drinks' caffeine levels and the potential harm from consuming PRIME Energy drinks.

72. Advertisements and representations of PRIME Energy drinks contained misrepresentations and deceptive omissions because they were likely to, and in fact did, mislead consumers including Plaintiff.

73. Defendant owed Plaintiff and class members a duty to disclose facts of PRIME Energy drinks caffeine levels because they were known and/or accessible exclusively to Defendant, who had exclusive and superior knowledge of the facts; because the facts would be material to consumers; because the Defendant actively concealed or understated them; because the Defendant intended for consumers to rely on the omissions in question; because Prime Energy drinks pose an unreasonable risk of substantial bodily injury; and because Defendant made partial representations concerning the same subject matter as the omitted facts.

74. Defendant knew or should have known that their misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

75. Defendant engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively and misleadingly convey that their products contained a certain amount of caffeine when in fact the products contain much.

76. Defendant's conduct actually and proximately caused actual damages to Plaintiff and class members. Absent Defendant's unfair and fraudulent conduct, Plaintiff and class members would not have purchased PRIME Energy drinks or would have paid less for them. Defendant's misrepresentations and omissions induced Plaintiff and class members to purchase PRIME Energy

drinks they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered into.

77. Plaintiff seeks, on behalf of himself and each member of the class, damages, as well as any other relief the Court may deem just or proper.

## V. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

a) Certify the Class, and appoint Plaintiff and his counsel to represent the Class;

b) Find that Defendant engaged in the unlawful conduct as alleged herein;

c) Enjoin Defendant from engaging in such conduct and order any further declaratory and/or injunctive relief as appropriate;

d) Enter a monetary judgment in favor of Plaintiff and the Class to compensate them for the injuries suffered, together with pre-judgment and post-judgment interest, statutory and punitive damages, and penalties where appropriate;

e) Require Defendant to rectify all damages caused by its misconduct;

f) Award Plaintiff and the Class reasonable attorneys' fees and costs of suit, as allowed by law; and

g) Award such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  May 9, 2024								Respectfully submitted,

**SULTZER & LIPARI, PLLC**

By: */s/ Philip J. Furia*
    Philip J. Furia, Esq.
    Jason P. Sultzer, Esq.
    85 Civic Center Plaza, Suite 200
    Poughkeepsie, New York 12601
    Tel: (845) 483-7100
    Fax: (888) 749-7747
    furiap@thesultzerlawgroup.com
    sultzerj@thesultzerlawgroup.com


    Paul J. Doolittle, Esq. (pro hac vice forthcoming)
    **POULIN | WILLEY |**
    **ANASTOPOULO, LLC**
    32 Ann Street
    Charleston, SC 29403
    Tel: (803) 222-2222
    Email:paul.doolittle@poulinwilley.com
    cmad@poulinwilley.com

    *Attorney for Plaintiff*