UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: PRIME ENERGY CONSUMER
LITIGATION

*This Document Relates to All Actions*

24 Civ. 2657 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

For those consumers seeking a jolt of energy in caffeinated-beverage form, does the inclusion of a smidgen more caffeine than advertised amount to a deceptive practice?  For Plaintiffs Lara Vera, Jemirria Thompson, and Bryant Preudhomme ("Plaintiffs"), the answer is yes:  Plaintiffs bring this proposed class action against Defendant Prime Hydration LLC ("Defendant") asserting violations of various state consumer fraud statutes (collectively, the "State Consumer Fraud Acts"); violations of New York General Business Law ("GBL") §§ 349-350; and common-law claims for breach of express warranty, unjust enrichment, and fraud.  Broadly, Plaintiffs claim that Defendant's energy drinks (the "Products") contain 15-25 milligrams more caffeine than the 200 milligrams represented by Defendant on its labels and in its advertising, and, further, that this difference in caffeine content amounts to deceptive advertising and consumer fraud.

Before the Court is Defendant's motion to dismiss Plaintiffs' Consolidated Class Action Complaint (the "CAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and failure to plead with particularity under Rule 9(b) where applicable.  Additionally, Defendant asserts that Plaintiffs lack standing to pursue their injunctive relief claims.  Accordingly,

Defendant requests the Court dismiss the CAC with prejudice.  For the reasons set forth in the remainder of this Opinion, the Court grants Defendant's motion to dismiss in full.

## BACKGROUND[1]

### A.    Factual Background

Plaintiffs are citizens and residents of New York.  (CAC ¶¶ 5-7). Defendant "formulates, manufactures, advertises, and sells" the Products, as well as non-caffeinated hydration drinks, throughout the country, including in New York.  (*Id.* ¶¶ 1, 4, 12).  The label on the back of each of the Products has the following language: "CONTAINS: 200mg OF CAFFEINE PER 12 OZ SERVING[.]"  (*Id.* ¶ 20).  Likewise, on the side of the Products' packaging, there is an icon of a lightning bolt with the language: "200mg CAFFEINE[.]"  (*Id.*). Defendant also advertises the caffeine content as such on its website and "through third-party retail[e]r websites like Amazon.com."  (*Id.* ¶ 19).

Plaintiff Vera received a case of the Products in or around August 2022, which she believes was part of a promotion.  (CAC ¶ 5).  Subsequently, Plaintiff Vera purchased the Products "several times in 2023" and "paid approximately

---

[1]    This Opinion draws its facts from the Consolidated Class Action Complaint (the "CAC" (Dkt. #33)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies, as appropriate, on the exhibit attached to the Declaration of Stephen Saxl (Dkt. #41-1 ("Saxl Decl., Ex. 1")), a copy of a pre-suit notice letter sent on behalf of Plaintiff Lara Vera.

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #42); to Plaintiffs' memorandum of law in opposition to the motion to dismiss as "Pl. Opp." (Dkt. #43); and to Defendant's reply memorandum of law in further support of the motion to dismiss as "Def. Reply" (Dkt. #44).

$3.00 or $4.00 for each." (*Id.*). Plaintiff Thompson purchased the Products "several times in 2023." (*Id.* ¶ 6). Plaintiff Thompson also purchased two 24-count cases of the Products on April 14, 2024, paying "approximately $1.45" for each can. (*Id.*). Plaintiff Preudhomme purchased the Products "[d]uring the applicable statute of limitations period" for "up to the regular retail price." (*Id.* ¶ 7).

In making their respective purchasing decisions, Plaintiffs claim that they relied on Defendant's label and representation that the Products contained 200 milligrams of caffeine. (CAC ¶¶ 5-7). However, Plaintiffs aver that "based upon testing commissioned by Plaintiffs' attorneys, the Products actually contain between 215-225 milligrams of caffeine rather than the advertised 200 milligrams." (*Id.* ¶ 21). Plaintiffs allege that they "either paid a price premium" for the Products or "would not have purchased the Products at all" had they known the label "was false and misleading." (*Id.* ¶¶ 5-6; *see also id.* ¶ 7 ("Plaintiff ... was unaware that the Products contained more caffeine than advertised and would not have purchased the Products if that were fully disclosed or would have paid less than he did.")). Plaintiff Preudhomme further claims that he would purchase the Products in the future "if Defendant (i) lowered the amount of caffeine in the Products; and/or (ii) undertook corrective changes to the packaging." (*Id.* ¶ 7).

## B.    Procedural Background

This litigation commenced on September 29, 2023, when Plaintiff Kyra Drugas filed a class action complaint substantially similar to the operative

CAC, on behalf of the same putative class. (*See* 23 Civ. 8552 (the "Drugas Action"), Dkt. #1).[2]  On November 16, 2023, Defendant notified this Court of its intent to file a motion to dismiss and requested a pre-motion conference. (*Id.*, Dkt. #13).  The Court held a pre-motion conference on January 10, 2024, at which the Court set a briefing schedule. (*Id.*, January 10, 2024 Minute Entry).  On the day that Defendant's motion to dismiss was due, Plaintiff Drugas filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (*Id.*, Dkt. #18).[3]

Approximately two months later, on April 8, 2024, Plaintiff Vera filed her initial class action complaint (the "Vera Action") against Defendant on behalf of the putative class. (Dkt. #1).  Shortly thereafter, on April 25, 2024, Defendant moved to transfer the Vera Action to this Court, claiming that the Drugas Action was "virtually identical" to the Vera Action. (Dkt. #8 at 1).  The case was promptly transferred to the undersigned. (Dkt. #9).  At that time, Defendant requested that Plaintiff Vera dismiss the action, "pointing out that Vera's only alleged purchases — in June and August of 2022 — were false as Prime Energy was not available for purchase until 2023." (Dkt. #14 at 1).  Instead of dismissing the action, Vera filed an amended class action complaint on May 7,

---

[2]    The class action complaint included an additional cause of action under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, that is not included in the CAC. (*See* 23 Civ. 8552 (the "Drugas Action"), Dkt. #1 at 16-17).

[3]    Two days prior to Defendant's motion to dismiss deadline in the Drugas Action, Ms. Drugas's counsel notified Defendant of their desire to move for an order substituting Plaintiff Vera as named plaintiff, as Ms. Drugas no longer wished to be a named plaintiff. (Dkt. #8 at 1-2).  Defendant declined to consent; Ms. Drugas moved for a voluntary dismissal instead. (*Id.*).

2024. (Dkt. #12 (the "Vera FAC")). In relevant part, Vera amended her claim to aver that she had received a case of the Products in or around August 2022, "which she believes was through a promotion," and then subsequently purchased the Products "several times in 2023." (Vera FAC ¶ 5). The Vera FAC also added Plaintiff Thompson's claims. (*Id.* ¶ 6).

On May 20, 2024, Defendant sought the Court's permission to file a motion to dismiss the Vera FAC. (Dkt. #14). Defendant cited the Court's previous permission in the Drugas Action to "move to dismiss a virtually identical complaint" as obviating the need for a pre-motion conference. (*Id.* at 1). "In view of the unique circumstances of this case," the Court agreed, permitted the parties to proceed to motion practice without a pre-motion conference, and set a briefing schedule. (Dkt. #17). In accordance with the briefing schedule, Defendant filed its motion to dismiss on June 21, 2024. (Dkt. #19-21).

As briefing began in the Vera Action, Plaintiff Bryant Preudhomme filed a separate complaint against Defendant on May 9, 2024 (24 Civ. 3568 (the "Preudhomme Action"), Dkt. #1), which complaint was "virtually identical" to the Vera FAC (*id.*, Dkt. #12 at 1). On June 14, 2024, Defendant filed a letter motion requesting to transfer the Preudhomme Action to this Court, in view of the fact that the Vera Action was already proceeding before the undersigned. (*Id.*).

On June 24, 2024, this Court denied without prejudice to renew Defendant's motion to dismiss and instead consolidated the Vera Action with

the Preudhomme Action into the current form of the action, *In Re: Prime Energy Consumer Litigation*. (Dkt. #22). On October 2, 2024, the Court held a conference regarding the appointment of interim lead counsel; the Court subsequently granted Plaintiffs' motion to appoint Kristen Lake Cardoso as interim lead counsel. (October 2, 2024 Minute Entry).[4]

Shortly before that conference, on September 17, 2024, Plaintiffs filed the CAC, the operative pleading in this action. (Dkt. #33). In accordance with the briefing schedule set forth at the October 2 conference, Defendant filed its motion to dismiss the CAC on October 16, 2024. (Dkt. #40-42). Plaintiffs filed their opposition to Defendant's motion to dismiss on November 18, 2024. (Dkt. #43). Defendant filed its reply on December 9, 2024, at which point the instant motion was fully briefed. (Dkt. #44).

## DISCUSSION

### A.    Applicable Law

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). In doing so, the Court "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This narrow

---

[4]    Plaintiffs initially moved to appoint interim co-lead counsel, but later withdrew that request. (Dkt. #25-26, 36-37).

universe includes "facts stated on the face of the complaint" and "documents appended to the complaint or incorporated in the complaint by reference." *Id.* (internal citation omitted); *accord United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). Thus, in resolving the instant motion, the Court mainly considers the CAC. However, as appropriate, the Court also considers the pre-suit notice letter submitted as an exhibit to Defendant's motion to dismiss, which is incorporated in the CAC by reference. (CAC ¶ 70 ("On March 4, 2024, Plaintiffs' counsel sent Defendant a pre-suit notice letter, via certified mail return receipt requested, that complied in all respects with U.C.C. §§ 2-313, 2-607."); Saxl Decl., Ex. 1).

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)). This requires "more than labels and conclusions" but not "detailed factual allegations." *Twombly*, 550 U.S. at 555.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

7

550 U.S. at 557).  Moreover, "the tenet that a court must accept as true all of
the allegations contained in a complaint is inapplicable to legal conclusions.
Threadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice."  *Id.*  Therefore, "a court considering a
motion to dismiss can choose to begin by identifying pleadings that, because
they are no more than conclusions, are not entitled to the assumption of
truth."  *Id.* at 679.

## B.    Analysis

### 1.    Plaintiffs Fail to State a Claim Under GBL §§ 349 and 350

"The standard for recovery under General Business Law § 350, while
specific to false advertising, is otherwise identical to section 349."  *Goshen* v.
*Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).  As such, the Court
merges its analysis of the two claims.  *See Cosgrove* v. *Oregon Chai, Inc.*, 520 F.
Supp. 3d 562, 575 (S.D.N.Y. 2021).  To sufficiently plead a claim under either
§ 349 or § 350, "a plaintiff must allege [i] that the defendant ... engaged in
consumer-oriented conduct; [ii] that the conduct was materially misleading;
and [iii] that the plaintiff suffered injury as a result of the allegedly deceptive
act or practice."  *Id.* (quoting *Weisblum* v. *Prophase Labs, Inc.*, 88 F. Supp. 3d
283, 292 (S.D.N.Y. 2015)) (alterations in *Cosgrove*).  Plaintiffs are not required
to meet the heightened pleading requirements of Federal Rule of Civil
Procedure 9(b) for GBL claims.  *Id.*  Still, "plaintiffs must do more than
plausibly allege that a 'label might conceivably be misunderstood by some few
consumers'"; they must "plausibly allege 'that a significant portion of the

general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Sarr* v. *BEF Foods, Inc.*, No. 18 Civ. 6409 (ARR) (RLM), 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (quoting *Jessani* v. *Monini N. Am., Inc.*, No. 17-2504-cv, 2018 WL 6287994, at *1 (2d Cir. Dec. 3, 2018) (summary order)) *see also Twohig* v. *Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021).

### a.   Plaintiffs Fail to Allege Materially Misleading Conduct Because They Have Not Sufficiently Alleged That Any Misrepresentation Occurred

The crux of Plaintiffs' CAC is the sole allegation that, "based upon testing commissioned by Plaintiffs' attorneys, the Products actually contain between 215-225 milligrams of caffeine rather than the advertised 200 milligrams." (CAC ¶ 21).  Defendant argues that this allegation — with no information regarding "how many cans of the [Products] were tested, when they were manufactured, when and where they were purchased, and how the cans were selected for testing" — is insufficient to permit the Court "to make *any* inferences regarding the caffeine content" of the Products Plaintiffs allegedly purchased.  (Def. Br. 11).  The Court agrees.

In *Hawkins* v. *Coca-Cola Company*, a sister court in this District confronted a similar issue.  654 F. Supp. 3d 290 (S.D.N.Y. 2023).  There, the plaintiff alleged that the defendant had engaged in materially misleading conduct because the product in question was labeled "100% natural flavors," but, according to the plaintiff, "[l]aboratory analysis concluded th[e p]roduct contain[ed] artificial, DL-Malic Acid instead of natural, L-Malic Acid."  *Id.* at

296-97.  The court found that the "amorphous laboratory analysis" was "a far cry from raising any factually substantiated allegations that the [p]roduct contain[ed] artificial malic acid, rather than natural malic acid." *Id.* at 306 (internal quotation marks omitted).  Therefore, the court concluded that "the [c]omplaint's allegations that the [p]roduct contain[ed] artificial flavors [were] conclusory statements that the Court [wa]s not required to accept." *Id.*

Courts in this District have also addressed this issue in various cases challenging food manufacturers' use of the terms "vanilla" and "natural flavors," *inter alia*, in their descriptions or advertising.  *See, e.g.*, *Myers* v. *Wakefern Food Corp.*, No. 20 Civ. 8470 (NSR), 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) (dismissing the amended complaint); *Santiful* v. *Wegmans Food Mkts., Inc.*, No. 20 Civ. 2933 (NSR), 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022) ("*Santiful I*") (dismissing the first amended complaint); *Santiful* v. *Wegmans Food Mkts., Inc.*, No. 20 Civ. 2933 (NSR), 2023 WL 2457801 (S.D.N.Y. Mar. 10, 2023) ("*Santiful II*") (dismissing the second amended complaint); *see also Hawkins*, 654 F. Supp. 3d at 303 (collecting cases).  As relevant here, in *Santiful II*, the court offered the following observations in dismissing the plaintiffs' claims under GBL §§ 349 and 350 for the second time:

> To substantiate their allegations, [p]laintiffs included the results of a laboratory analysis, which were interpreted solely by their attorneys, with no support from, or even identification of, the researcher who conducted the analysis, or of any other expert[.]  As clearly stated in the [c]ourt's [f]irst [o]pinion & [o]rder, [p]laintiffs' failure to include "information as to the testing methodology, the date, time, or place of the testing, who conducted the testing, and what the exact

10

> product tested was" is "insufficient to support
> [p]laintiffs' otherwise conclusory statements as to the
> ingredients of the [p]roduct." … Despite this [c]ourt's
> clear guidance in the [f]irst [o]pinion & [o]rder,
> [p]laintiffs failed to provide this information regarding
> the details of their laboratory analysis. Because the
> presence of ethyl vanillin is supported *solely* by the
> results of an unsubstantiated laboratory analysis, this
> [c]ourt sees no "non-conclusory, substantiated
> allegations" to suggest ethyl vanillin is present in the
> [p]roduct[.]

2023 WL 2457801, at *4 (internal citations omitted); *see also Myers*, 2022 WL

603000, at *4 ("To begin, [p]laintiff claims that the [p]roduct was allegedly

subjected to a laboratory test, but she fails to provide any details whatsoever

about [what] this laboratory test entailed. She does not, for instance, describe

the testing methodology followed, the specific date, time, or place of the testing,

who conducted the testing, the qualifications of the testers, etc.").

The same holds true here. Plaintiffs have failed to provide any

supporting information whatsoever regarding the alleged testing, other than

that it was "commissioned by Plaintiffs' attorneys" and allegedly showed that

the Products contain 215-225 milligrams of caffeine. (CAC ¶ 21). As this is a

mere conclusion, it is "not entitled to the assumption of truth." *Iqbal*, 556 U.S.

at 679; *see also Hawkins*, 654 F. Supp. 3d at 306 (finding that plaintiff's

allegations based on an "amorphous laboratory analysis" were "conclusory

statements that the [c]ourt [wa]s not required to accept"); *Santiful II*, 2023 WL

2457801, at *4 (finding "results of an unsubstantiated laboratory analysis" to

be neither non-conclusory nor substantiated allegations). Here, Plaintiffs'

entire case is premised on the conclusory statement that the Products actually

11

contain 215-225 milligrams of caffeine, as purportedly determined by unspecified testing. Without any factual allegations as to the true caffeine content of the Products, or the testing that led to that conclusion, Plaintiffs do not "nudge" their "claims across the line from conceivable to plausible." *In re Elevator Antitrust Litig.*, 502 F.3d at 50 (internal quotation marks omitted).

Plaintiffs contend that the so-called "Vanilla Cases," including *Santiful I* and *Myers*, are inapposite to the instant case. (Pl. Opp. 5-6). In particular, Plaintiffs argue that those cases were dismissed on the ground that the results of the alleged laboratory testing did not support the plaintiffs' claims, and not because the information regarding the laboratory testing itself was inadequate. (*Id.*). Not so. While it is true that those cases found that the respective plaintiffs had *also* failed to demonstrate how the laboratory testing results supported their ultimate conclusions — for example, that artificial flavors were present where the defendants had represented that the flavors were natural — Plaintiffs ignore their first steps. *See Myers*, 2022 WL 603000 at *4 (concluding that plaintiff had failed to sufficiently allege misrepresentation where she "fail[ed] to provide any details whatsoever about [what] this laboratory test entailed," and "[f]urther, … failed to substantiate how exactly the two alleged findings from the purported lab test helped her arrive at the conclusion that the [p]roduct is made of artificial flavors"); *Santiful I*, 2022 WL 268955, at *4 (first finding that plaintiff's proffered lab analysis "contain[ed] no information as to the testing methodology, the date, time, or place of the testing, who conducted the testing, and what the exact product tested was,"

and then finding that "even the data offered" did not "conclusively support" the allegations). That the courts in those cases found the testing allegations to be insufficient on two bases does not undermine this Court's conclusion that Plaintiffs' failure to allege any information about their proffered laboratory testing renders those allegations "insufficient to support Plaintiffs' otherwise conclusory statements as to the [contents] of the Product." *Santiful II*, 2023 WL 2457801, at *4 (quoting *Santiful I*, 2022 WL 268955, at *4 (internal quotation marks omitted)).

Finally, Plaintiffs rely on the Second Circuit's decision in *John* v. *Whole Foods Market Group, Inc.* to support their contention that it is "well-settled law that Plaintiffs are not required to disclose all the details of their testing at the pleading stage." (Pl. Opp. 6 (citing *John* v. *Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017))). While that general proposition of law may be true, it does not mean that Plaintiffs are not required to disclose *any* details of their testing at this stage. In *John*, the plaintiff relied on, and attached to the complaint, a press release from the New York City Department of Consumer Affairs (the "DCA") announcing a preliminary finding that Whole Foods' New York City locations had systematically overcharged customers for pre-packaged foods by overstating the weights of the products. *John*, 858 F.3d at 734. The press release, however, explicitly provided that the "DCA tested packages of 80 different types of pre-packaged products and found all of the products had packages with mislabeled weights. Additionally, 89 percent of the packages tested did not meet the federal standard for the maximum amount that an

individual package can deviate from the actual weight[.]" *Id.* That is more information than Plaintiffs have provided here. In the instant case, Plaintiffs have provided *no* information as to the number of cans tested, whether various flavors were tested, whether various lots were tested, and, importantly, how many cans tested actually contained more than 200 milligrams of caffeine. In addressing the district court's concerns about the lack of information regarding the testing methodology, the Second Circuit in *John* explained that "[a]t the pleading stage, [a plaintiff] need not prove the accuracy of [its] findings or the rigor of its methodology; he need only generally allege facts that, accepted as true, make his alleged injury plausible." *Id.* at 737. Here, the Court has not asked Plaintiffs to support the accuracy of their allegations or their rigor of their methodology, but to simply provide some non-conclusory factual allegations as to the alleged testing. Plaintiffs have now failed to do so three times in this action. Accordingly, Plaintiffs have not sufficiently pleaded materially misleading conduct, and their claims under GBL §§ 349 and 350 fail.

### b.    Plaintiffs Also Fail to Allege Materially Misleading Conduct Because the Purported Misrepresentation Is Not Material as a Matter of Law

As discussed, "[t]o establish that conduct is materially misleading, a plaintiff must demonstrate that a reasonable consumer would likely be misled by the alleged misrepresentation." *Lugones* v. *Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240-41 (S.D.N.Y. 2020) (quoting *Sitt* v. *Nature's Bounty, Inc.*, No. 15 Civ. 4199 (MKB), 2016 WL 5372794, at *8 (E.D.N.Y. Sept. 26, 2016))

(internal quotation marks omitted); *see also McCracken* v. *Verisma Sys., Inc.*, 91 F.4th 600, 607 (2d Cir. 2024) ("A defendant's actions are materially misleading when they are likely to mislead a reasonable consumer acting reasonably under the circumstances." (internal quotation marks omitted)). "Although the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, it is 'well settled that a court may determine as a matter of law that an allegedly deceptive [practice or] advertisement would not have misled a reasonable consumer.'" *Wynn* v. *Topco Assocs., LLC*, No. 19 Civ. 11104 (RA), 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quoting *Fink* v. *Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)) (internal citations omitted).

Generally, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[c]ourts examining misleading product claims often rely on common sense observations and judicial experience." *Lumbra* v. *Suja Life, LLC*, 674 F. Supp. 3d 7, 14 (N.D.N.Y. 2023); *see also Weinstein* v. *eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("*Iqbal* directs the Court to apply its common sense when determining the plausibility of a claim — common sense dictates that no reasonable consumer could plausibly think that StubHub tickets come directly from the Yankees[.]"); *Warren* v. *Coca-Cola Co.*,  670 F. Supp. 3d 72, 83 (S.D.N.Y. 2023) (rejecting plaintiff's claim that the margarita hard seltzer she purchased at a grocery store was misleading because it did not contain distilled

spirits, noting that experience and common sense suggest that adults are aware that hard liquor cannot be sold in grocery stores and that "nobody" sells a margarita containing hard liquor for $1.50, the price plaintiff paid). Furthermore, in making such a determination, "context is crucial." *Fink*, 714 F.3d at 742.

Viewed through its judicial experience and common sense, the Court fails to see how a reasonable consumer, acting reasonably under the circumstances, would be materially misled in this context. The Court understands from the CAC that consumers of the Products are generally seeking more caffeine, not less, as evidenced by their desire to purchase the Product in the first place (in comparison to, for example, purchasing a cup of coffee or a can of Red Bull, each with about half the caffeine content). (CAC ¶ 14). Such consumers decide to purchase the Products, which are labeled as an "energy drink" and contain a depiction of a lightning bolt next to the caffeine content, because they want a substantial amount of caffeine. (*Id.* ¶¶ 12, 20). Therefore, it defies common sense to suggest that it would be material that the Products contain a mere 7-11% additional caffeine — the exact thing those consumers are seeking.

In determining whether a defendant's action or practice is materially misleading, the Second Circuit considers whether it "would have caused [the plaintiffs] to make a different initial choice[.]" *McCracken*, 91 F.4th at 607 (citing *N. State Autobahn, Inc.* v. *Progressive Ins. Grp. Co.*, 953 N.Y.S.2d 96, 102 (2d Dep't 2012) (holding that consumer-oriented conduct is materially

16

misleading only "where the deception pertains to an issue that may bear on a consumer's decision to participate in a particular transaction")). In the instant case, Plaintiffs claim that they would not have purchased the Products had they known that the caffeine content representation "was false and misleading." (CAC ¶¶ 5-6). But, the Court reiterates, Plaintiffs must "plausibly allege that a significant portion of the general consuming public or targeted customers, acting reasonably in the circumstances, could be misled," *Twohig*, 519 F. Supp. 3d at 160 (quoting *Sarr*, 2020 WL 729883, at *3 (internal quotation marks omitted)), not just that Plaintiffs themselves were misled. They have not done so here. Plaintiffs' only allegation on the point is to assert that is "it is axiomatic that the amount of reported caffeine contained within Defendant's Products … is material to any consumer seeking to purchase an energy drink, particularly where there is the possibility of an adverse reaction to caffeine, such as with children." (CAC ¶ 18).[5] However, it is inconceivable to this Court that a consumer singularly focused on purchasing a beverage with a significantly-above-average concentration of caffeine would be concerned, much less disturbed, by the inclusion of a tiny bit more caffeine in that beverage.

---

[5]     Plaintiffs' allegations regarding the negative side effects of caffeine on children is simply a red herring. The Court notes that none of the Plaintiffs is a child, nor do the Plaintiffs put forth any allegations that children consumed the Products and experienced such side effects. Moreover, Plaintiffs aver there is "no proven safe dose of caffeine for children" (CAC ¶ 15), and the Products themselves contain a warning that they are "not recommended for children" (*id.* ¶ 20). Thus, the Court fails to see how 15-25 milligrams, in addition to the already considerable 200 milligrams, would be material when *no* amount is alleged to be safe for children, or why that is relevant to this action.

Additionally, Plaintiff Preudhomme asserts that he would purchase the Products again if Defendant reduced the amount of caffeine in the Products *or* changed the label. (CAC ¶ 7). Assuming *arguendo* that the Products do contain 215 milligrams of caffeine, and that the label were changed to reflect that fact, Plaintiff Preudhomme would purchase the Products again. This suggests to the Court that the alleged 7-11% difference in caffeine content is not in fact material to him. For the reasons stated above, the Court concludes that even if Plaintiffs had adequately alleged a misrepresentation, they nonetheless fail to allege that a reasonable consumer would be materially misled due to Defendant's practices.[6]

---

[6]    Because Plaintiffs have not adequately alleged materially misleading conduct, the Court need not reach the injury requirement for the GBL claims. But the Court notes that, at first blush, it would appear to beggar logic that a person who purchases an energy drink would be injured by receiving slightly more caffeine through such purchase. Indeed, under *Small*, it would seem that Plaintiffs have not presented a legally cognizable injury. *See Small* v. *Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (holding that "customers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices," have not suffered an injury under General Business Law § 349). As just discussed, Plaintiffs have not adequately pleaded a deceptive practice. But even if they had, as to injury, they have alleged only that they either paid a price premium for the Products or would not have purchased the products if they had known that they included slightly more caffeine than publicized on the label. (CAC ¶¶ 5-7).

This Court is aware of another decision in which the Second Circuit suggested that to sufficiently plead an injury, plaintiffs must allege that because of a misleading practice, they purchased a product and did not receive the full value of their purchase. *Orlander* v. *Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). Again, this Court fails to see how Plaintiffs here did not receive the full value of their purchase. But it notes that sister courts in this District have interpreted *Orlander* to mean that plaintiffs can sufficiently plead an injury by alleging that they "would not have purchased the product or been willing to pay as much had they known the true facts." *See Valcarcel* v. *Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 280 (S.D.N.Y. 2021) (quoting *Campbell* v. *Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 388 (S.D.N.Y. 2021) (internal quotation marks omitted)). The Court struggles to reconcile these cases with the holding in *Small*.

### 2. Plaintiffs Fail to State a Claim for Violation of the State Consumer Fraud Acts

To review, Plaintiffs also bring a cause of action for violation of several State Consumer Fraud Acts. (CAC ¶¶ 39-44). In particular, Plaintiffs bring this claim individually and on behalf of a putative "Consumer Fraud Multi-State Class" consisting of "[a]ll persons in the states of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington that purchased the Products within the applicable limitations period" (*id.* ¶ 29), alleging that Defendant's deceptive practices violate the consumer fraud acts in each of the states listed above (*id.* ¶ 41).

The parties agree that these multi-state claims "rise and fall" with Plaintiffs' claims under GBL §§ 349-350. (*See* Def. Br. 18-20; Pl. Opp. 13-14 (arguing that this Court should follow a sister court, which found that the plaintiff in that case had stated a GBL claim, and therefore had stated multi-state claims as well (citing *Kelly* v. *Beliv LLC*, 640 F. Supp. 3d 286, 300 (S.D.N.Y. 2022))). The Court agrees with the parties that the multi-state claims here rise and fall with the GBL claims, and accordingly dismisses Plaintiffs' claims for violation of state consumer fraud acts. *See Adeghe* v. *Procter & Gamble Co.*, No. 22 Civ. 10025 (CS), 2024 WL 22061, at *5 (S.D.N.Y. Jan. 2, 2024) ("[C]onsumer protection statutes from states across the country share the common requirement that a reasonable consumer would be misled by a defendant's statement …, and because this Court has already determined that the Product's labeling would not mislead a reasonable consumer, [her]

consumer fraud multi-state class claims [must be] dismissed." (internal quotation marks and citations omitted) (alterations in original)).

### 3.    The Court Dismisses Plaintiffs' Remaining Claims

Plaintiffs also bring claims for breach of express warranty (CAC ¶¶ 62-70), unjust enrichment (*id.* ¶¶ 71-75), and fraud (*id.* ¶¶ 76-81).  As other courts resolving similar claims have observed, the failure of Plaintiffs' overarching theory of materially misleading business practices dooms these claims as well. *See, e.g.*, *Barreto* v. *Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806-10 (S.D.N.Y. 2021) (dismissing claims for fraud, breach of warranty, and unjust enrichment on the basis that the court had "already determined that [plaintiff] has failed to allege that the product's labeling would be likely to deceive or mislead a reasonable consumer"); *Wynn*, 2021 WL 168541, at *6-7 (same).

#### a.    Plaintiffs Fail to State a Claim for Breach of Express Warranty

"New York breach of express warranty claims require [i] a *material statement* amounting to a warranty; (ii) the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; (iii) the *breach* of this warranty; and (iv) injury to the buyer *caused* by the breach."  *Cosgrove*, 520 F. Supp. 3d at 585 (quoting *Brady* v. *Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015) (quoting *Avola* v. *La.-Pacific Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013))) (emphases in *Avola*).  Here, Plaintiffs have failed to allege that the Products do not actually comport with the specified caffeine content on the label by providing no non-conclusory allegations regarding the actual

caffeine content of the Products. Thus, they have failed to allege a breach of warranty.

Additionally, a breach of express warranty claim requires that "a buyer ... provide the seller with timely notice of the alleged breach of warranty." *Quinn* v. *Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (citing N.Y. U.C.C. § 2-607(3)(a)). Plaintiffs assert that a pre-suit notice letter was provided by their counsel to Defendant on March 4, 2024, that "complied in all respects with U.C.C. §§ 2-313, 2-607." (CAC ¶ 70; *see also* Saxl Decl., Ex. 1). Defendant contests the adequacy of the March 4, 2024 pre-suit letter on the basis that it only identified the transactions that Plaintiff Vera originally alleged — purchases she purportedly made in June and August of 2022, "at a time when Prime Energy drinks were not yet on the market," and which Plaintiff Vera now concedes she received through a promotion. (Def. Br. 21; *see also* Saxl Decl., Ex. 1 at 4). Thus, Defendant claims that Plaintiffs failed to provide pre-suit notice that identifies a "troublesome" transaction. (Def. Br. 20). *See Anderson* v. *Unilever United States, Inc.*, 607 F. Supp. 3d 441, 457 (S.D.N.Y. 2022) ("To satisfy this notice requirement, a plaintiff must 'alert [the] defendant that the transaction was troublesome[.]'" (quoting *Grossman* v. *Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 282 (E.D.N.Y. Jan. 27, 2021)) (alteration in original)). However, Plaintiffs assert that a pre-suit letter need not "specify when a product was purchased or used." (Pl. Opp. 16 (quoting *Maroney* v. *Woodstream Corp.*, 695 F. Supp. 3d 448, 467-68 (S.D.N.Y. 2023))).

"Although [t]he sufficiency and timeliness of the notice is generally a question for the jury, to adequately plead the pre-suit notice requirement, plaintiff[s] must provide factual allegations — such as the date and method plaintiff[s] sent a pre-suit notice — supporting the contention that [they] notified [the] defendant of the alleged breach within a reasonable time." *Hawkins*, 654 F. Supp. 3d at 307 (internal quotation marks and citations omitted) (alterations in original).  Plaintiffs have done so here; in consequence, if Plaintiffs had sufficiently pleaded a claim for breach of warranty, the Court might also have found that Plaintiffs had sufficiently pleaded, at the motion to dismiss stage, the pre-suit notice requirement as well.  However, the Court notes that Plaintiffs' original allegations about Vera's June and August 2022 purchases, which are demonstrably false, raise concerns about the verity of their other allegations.  In any event, and for all of the reasons stated previously, Plaintiffs have failed to state a claim for breach of express warranty.

### b.    Plaintiffs Fail to State a Claim for Unjust Enrichment

Next, Plaintiffs allege a claim for unjust enrichment.  A claim for unjust enrichment under New York law requires a plaintiff to allege that "[i] defendant was enriched, [ii] at plaintiff's expense, and [iii] equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover[.]"  *Diesel Props S.r.l.* v. *Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (internal quotation marks omitted).  Plaintiffs' unjust enrichment claim is premised on the same theory of misrepresentation the Court has already rejected as inadequately pleaded.  "Where a deceptive trade practices

claim fails for failure to allege deception, an unjust enrichment claim fails, too."
*Cosgrove*, 520 F. Supp. 3d at 587-88 (quoting *Kennedy* v. *Mondelez Glob. LLC*,
No. 19 Civ. 302 (ENV) (SJB), 2020 WL 4006197, at *15 (E.D.N.Y. July 10,
2020)) (internal quotation marks omitted).

Additionally, Plaintiffs' unjust enrichment claim must be dismissed as
duplicative.  "[U]njust enrichment is not a catchall cause of action to be used
when others fail."  *Corsello* v. *Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).
Furthermore, "an unjust enrichment claim is not available where it simply
duplicates, or replaces, a conventional contract or tort claim."  *Shane Campbell
Gallery, Inc.* v. *Frieze Events, Inc.*, 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020) (quoting
*Corsello*, 18 N.Y.3d 777 at 790).  "Indeed, courts in the Second Circuit have
consistently held that unjust enrichment claims are duplicative of GBL claims."
*Barton* v. *Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021)
(collecting cases).

Plaintiffs' claim that Defendant was unjustly enriched is premised on the
same alleged misrepresentation that the Products contain 200 milligrams of
caffeine.  In fact, Plaintiffs rely on precisely the same allegations by
incorporation.  (CAC ¶ 71).  When a claim for unjust enrichment "relies on the
same factual allegations and same theory of liability" as Plaintiffs' other causes
of action, it is "plainly insufficient."  *Hesse* v. *Godiva Chocolatier, Inc.*, 463 F.
Supp. 3d 453, 474 (S.D.N.Y. 2020).  Plaintiffs rejoin that this claim is not
duplicative because they plead unjust enrichment in the alternative to their
claim for breach of express warranty.  (Pl. Opp. 20).  However, courts in this

Circuit have expressly rejected such an argument.  *See Nelson* v. *MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (holding that while "[i]t is certainly true, as Plaintiff argues, that he may plead unjust enrichment in the alternative to his other claims[,] … it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action"); *see also Campbell*, 516 F. Supp. 3d at 394 n.15 ("That [p]laintiff asserts that she brings this claim in the alternative does not change the analysis.").  Therefore, Plaintiffs' claim for unjust enrichment also fails as it is duplicative of Plaintiffs' remaining claims.

### c.    Plaintiffs Fail to State a Claim for Fraud

Finally, Plaintiffs allege a claim for fraud.  To state a claim for fraud under New York law, a plaintiff must allege that (i) the defendant made a misrepresentation or material omission of fact, (ii) that was false and known to be false by the defendant, (iii) made for the purpose of inducing the plaintiff to rely upon it, (iv) the plaintiff's justifiable reliance on the misrepresentation or material omission, and (v) injury.  *See Pasternack* v. *Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (2016); *see also In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 212-13 (S.D.N.Y. 2019).  Claims for fraud, even under state law, must also satisfy the heightened pleading requirements of Rule 9(b).  *See Premium Mortg. Corp.* v. *Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009); *see generally Malvar Egerique* v. *Chowaiki*, No. 19 Civ. 3110 (KPF), 2020 WL 1974228, at *24 (S.D.N.Y. Apr. 24, 2020), *vacated in part sub nom. Weiss* v.

*David Benrimon Fine Art LLC*, No. 20-3842-cv, 2021 WL 6128437 (2d Cir. Dec. 28, 2021) (summary order). Here, Plaintiffs fall at the first hurdle: for all of the reasons outlined above, Plaintiffs have not alleged an actionable misrepresentation or omission. Accordingly, the fraud claim is dismissed.

### 4.    Plaintiffs Lack Standing to Pursue Injunctive Relief

Defendant lastly argues that Plaintiffs lack standing under Article III to seek injunctive relief because they fail to allege that they intend to purchase the Products in the future. (Def. Br. 24-25). Defendant brings this claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*Id.*). "Although standing challenges are sometimes brought under Rule 12(b)(6), 'the proper procedural route is under Rule 12(b)(1).'" *Cosgrove*, 520 F. Supp. 3d at 574 (quoting *All. for Env't Renewal, Inc.* v. *Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006)).

"To establish standing to obtain prospective relief, a plaintiff 'must show a likelihood that he will be injured in the future.'" *Carver* v. *City of New York,* 621 F.3d 221, 228 (2d Cir. 2010) (quoting *Shain* v. *Ellison,* 356 F.3d 211, 215 (2d Cir. 2004)). There must be a "substantial risk" that the future injury will occur, or the threatened injury must be "certainly impending." *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 158 (2014). "[A]llegations of possible future injury are not sufficient," *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted), nor is "past exposure to illegal conduct," *City of Los Angeles* v. *Lyons*, 461 U.S. 95, 102 (1983) (internal brackets omitted) (quoting *O'Shea* v. *Littleton*, 414 U.S. 488, 495 (1974)).

"Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *DeShawn E. ex rel. Charlotte E.* v. *Safir*, 156 F.3d 340, 344-45 (2d Cir. 1998)).

Plaintiffs contest this challenge, pointing to Plaintiff Preudhomme's statement that he "would purchase the Products again if Defendant (i) lowered the amount of caffeine in the Products; and/or (ii) undertook corrective changes to the packaging." (Pl. Opp. 21 (quoting CAC ¶ 7)). However, conditional promises to purchase the Products if they are altered are insufficient to allege future injury. *See Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d at 238-39; *see also Holve* v. *McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 553 n.10 (W.D.N.Y. 2018) (collecting cases). Therefore, as there is no "likelihood that [Plaintiffs] will be injured in the future," *Carver,* 621 F.3d at 228, Plaintiffs lack standing to seek injunctive relief.

### 5.   The Court Dismisses the CAC With Prejudice

Given the procedural history in this case, the Court dismisses the CAC with prejudice. There have been a total of five complaints filed in this litigation, with at least two pre-motion letters and two motions to dismiss informing Plaintiffs, before the filing of the CAC, of their deficiencies with respect to their alleged testing. Nevertheless, while Plaintiffs amended Plaintiff Vera's allegations to remedy the obvious problem that she claimed to have purchased

the Products before they were even on the market, Plaintiffs failed to amend their testing allegations to include any factual assertions about those tests, despite being on notice of this deficiency from Defendant. (Dkt. #14 at 2; Dkt. #21). Particularly in light of the many other deficiencies identified in this Opinion, the Court declines to give Plaintiffs yet another bite at the apple. *Cf. Nat'l Credit Union Admin. Bd.* v. *U.S. Bank Nat'l Ass'n,* 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (alteration, footnote, and internal quotation marks omitted)); *see also Cosgrove*, 520 F. Supp. 3d at 588 ("Because [p]laintiffs have twice amended their complaint after receiving pre-motion letters from Defendant, and because Plaintiffs' one-clause request for leave to amend in their opposition does not explain how they can cure the deficiencies identified in this [o]pinion, this Court dismisses the SAC with prejudice." (internal citations omitted)).

## CONCLUSION

Defendant's motion to dismiss is GRANTED in full. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:    July 31, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

28